# UNITED  STATES  DISTRICT  COURT

# SOUTHERN  DISTRICT  OF  GEORGIA

# STATESBORO DIVISION

| | | |
|---|---|---|
| AUBREY LEE PRICE | ) | |
| | ) | |
| v. | ) | CV615-133 |
| | ) | CR614-016 |
| UNITED STATES | ) | |

## REPORT AND RECOMMENDATION

Aubrey Lee Price, a former pastor and investment adviser, defrauded 115 investor clients and a South Georgia bank before faking suicide to live on the lam.  Facing a potential 560-*year* sentence, he bargained with the Government to plead guilty to fraud-based charges in exchange for a 360-*month* sentence cap.  CR614-016, doc. 3; doc. 8; doc. 10 at 75; doc. 31 at 2; doc. 39 at 58-59; the Presentence Investigation Report (PSR) at 22 ¶ 103.  He also agreed to waive his right to direct appeal and collateral review subject to inapplicable exceptions.  Doc. 8 at 16.  The Court accepted that agreement and then sentenced him to 360 months.  Doc. 31.  By written election, doc. 40, Price took no appeal.

Yet, he now moves for 28 U.S.C. § 2255 relief.  Doc. 33.  He seeks a reduced sentence or, in the alternative, "his appeal rights reinstated."

*Id.* at 6.   He complains that his lawyer was ineffective for: (a) failing to adequately consult with him on an appeal; and (b) failing to prove, at sentencing, that Price didn't swindle his victims out of millions[1] for "personal gain," but only to try "to save the bank from failure and my investors from financial loss."   *Id.* at 3.

## I. BACKGROUND

From the Probation Officer's 2014 Sentencing Recommendation:

Aubrey Lee Price, age 48, is before the Court having pled guilty to bank fraud, securities fraud, and wire fraud. Specifically, from an unknown date until June 2012, Price lost millions of dollars of investor funds through speculative trading while he [re]ported false capital gains to his investors. Price's criminal conduct culminated into him fraudulently losing over $45,000,000 belonging to at least 115 identified individual victims, and the closure of MB&T bank.

In June 2012, upon realizing the looming closure of the bank and the probability of him being indicted, Price faked his death. While on the lam for 18 months, Price assumed a false identify and used forged documents to elude prosecution; Price advised certain family members and friends who knew of his existence to not disclose to law enforcement authorities that he was alive; Price followed the media coverage regarding his pending charges and disappearance; Price authored "The Inglorious Fugitive," a 79-page memoir[2] that outlines his fraud and life as a fugitive; Price knowingly traveled

---

[1]   The Probation Office calculated the amount of his fraud at $45,939,944.39, PSR at 15 ¶ 54, but by judgment it was reduced to $42,837,800.77.  Doc. 31 at 9.

[2]   It's excerpted in this magazine interview: http://www.atlantamagazine.com/greatreads/the-many-lives-of-aubrey-lee-price/

outside the United States as a fugitive and deliberately arranged his travel to avoid law enforcement interference; and Price participated in a marihuana grow operation and the distribution of illicit drugs while living on the lam in Florida. The day after his instant arrest, agents seized 225 marihuana plants and computer software necessary to make fake identification documents from Price's residence in Circa, Florida. It should be noted that the defendant's participation in the distribution of marihuana, a Schedule I controlled substance, had no impact on the guideline calculations.

Sentencing Recommendation at 1-2 (footnote added).  The Probation Officer recommended a 300-month sentence plus "Restitution in the amount of $45,939,944.39." *Id*. at 2.  The Court imposed 360 months and $42,837,800.77 in restitution.  Doc. 31 at 2, 5.

## II. ANALYSIS

"To prevail on a claim of ineffective assistance of counsel [(IAC)], a prisoner must prove that his counsel rendered deficient performance and that he was prejudiced by the deficient performance." *Castillo v. United States*, 816 F.3d 1300, 1303 (11th Cir. 2016) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).  In evaluating adequacy of performance, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  "For performance to be deficient, it must be established that, in light of all

3

the circumstances, counsel's performance was outside the wide range of professional competence." *Putman v. Head*, 268 F.3d 1223, 1243 (11th Cir. 2001). On the prejudice prong, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Matire v. Wainwright*, 811 F.2d 1430, 1434 (11th Cir. 1987) (same); *see also Butcher v. United States*, 368 F.3d 1290, 1293 (11th Cir. 2004) ("[A]ttorney errors come in an infinite variety and are as likely to be utterly harmless in a particular case as they are to be prejudicial. That the errors had some *conceivable* effect on the outcome of the proceeding is insufficient to show prejudice.").

## A. Lost Appeal

Price claims that his lawyer "neglected to apprise me of the advantages and disadvantages of filing a direct appeal in my criminal case. Specifically, he advised me that I had no right to file an appeal because I had waived my appeal rights in my plea agreement. But for this advice, I would have insisted on filing an appeal." Doc. 33 at 3. He does not dispute that he received a substantial plea bargain benefit -- reduced (from 560 years to 360 months) sentence exposure.

Unsurprisingly, the Government wants its end of that deal: to be spared collateral appeal costs.  Doc. 41 at 17-19.  That includes *not* having to respond to this very claim.  The Government's § 2255 opposition brief reproduces the double-waiver portion of Price's plea agreement:

**XI. Waivers**

**A. Waiver of Appeal**

Defendant Aubrey Lee Price entirely waives his right to a direct appeal of his conviction and sentence on any ground. The only exceptions are that the Defendant Aubrey Lee Price may file a direct appeal of his sentence if (1) the court enters a sentence above the statutory maximum, (2) the court enters a sentence above the advisory Sentencing Guidelines range found to apply by the court at sentencing; or (3) the Government appeals the sentence. Absent those exceptions, Defendant Aubrey Lee Price explicitly and irrevocably instructs his attorney not to file an appeal.

**B. Waiver of Collateral Attack**

Defendant Aubrey Lee Price entirely waives his right to collaterally attack his conviction and sentence *on any ground* and by any method, including but not limited to a 28 U.S.C. § 2255 motion. This waiver shall not limit any right that the Defendant may have or acquire pursuant to Title 18, United States Code, Section 3582(c).

Doc. 41 at 5 (quoting doc. 8 at 16 (emphasis added)).[3]

---

[3] While headed by a different Attorney General, the Department of Justice pared back enforcement of appeal waivers. *See Mingo v. United States*, 67 F. Supp. 3d 1370, 1371 (S.D. Ga. 2014) (the new "policy seems to be this: Where ineffective assistance claims could, in the judgment of the U.S. Attorney, reasonably have some

Two days after sentencing, and consistent with that double waiver, Price conferred with counsel and signed this "POST–CONVICTION CONSULTATION CERTIFICATION"[4]:

---

basis, the government will not enforce the waiver. But where such claims lack even facial merit, it will.").

> Of course, the Court is not bound by the Justice Department's policy change. In quest of leniency, a defendant who plea bargains for reduced sentencing exposure is able to point to that plea as proof that he has accepted responsibility -- a point the sentencing judge may well consider in being lenient. It is in that sense that the judge absorbs and thus may be said to rely upon the plea bargain. And where that bargain (as was the case here) includes a double waiver, the judge can be influenced by that, too, since the defendant is sparing the taxpayers both direct appeal and collateral review expenses (a natural corollary to the spared-trial-expense component of the acceptance-of-responsibility factor in U.S. SENTENCING GUIDELINES MANUAL § 3E1.1(b)).

*Mingo*, 67 F. Supp. 3d at 1372 n. 3.  Here the Government expressly notes the Justice Department's policy yet insists upon enforcing the double-waiver because Price's IAC claims cannot be said to reasonably have merit.  Doc. 41 at 19 n. 5.

[4] The Notice reminds counsel of the general "duty to consult" with the client about an appeal by "advising the defendant about the advantages and disadvantages of taking an appeal, and making a reasonable effort to discover the defendant's wishes." *Roe v. Flores-Ortega*, 528 U.S. 470, 478 (2000). It requires that both the defendant and counsel execute the form, thus memorializing their consultation and the defendant's instructions regarding an appeal.

That written memorialization, in turn, can avoid the expense associated with an evidentiary hearing (appointment of counsel for defendant, transporting him from a distant prison, burdening the court's time and limited resources), which often costs taxpayers "$10,000 or more, and in a time of record national debt." *Hayes v. United States*, 2011 WL 3468799 at * 5 n. 5 (S.D. Ga. Aug. 9, 2011); *see also Marshall v. United States*, 2015 WL 3936033 at * 2 (S.D. Ga. June 26, 2015) (citing cases where similar § 2255 motions were summarily addressed based on the Notice). Created by this Court nearly a decade ago, it continues to document consultations and thus cabin "lost appeal" claims. *See, e.g.*, *United States v. Ervin*, CR416151, doc. 60-1 (S.D. Ga. Feb. 6, 2017) (executed Notice).

6

My attorney has fully explained to me the appellate process, including that I

> (a) have the right to a direct appeal to the Eleventh Circuit, with assistance of counsel, free of charge, if I am indigent, but to exercise that right I:
>
> (b) must timely file a notice of appeal and
>
> (c) comply with all appellate form-completion and briefing obligations;
>
> • My attorney has advised me about the advantages and disadvantages of pursuing an appeal;
>
> • My attorney has thoroughly inquired of me about my interest in appealing my conviction.

Doc. 40 at 4; *see also* doc. 10 at 1 (sentencing transcript date).

Price then checked the immediately following passage and signed his name under it -- with his lawyer witnessing his signature:

> I have decided not to file an appeal, *and my attorney has explained to me the consequences of failing to do so*. Those consequences include the waiver of my right to complain about the process that led up to my conviction, including in the future, should I decide to seek any form of habeas corpus, 28 U.S.C. § 2255, or other judicial relief from the conviction.

Doc. 40 at 4 (emphasis added).

That lawyer now attests:

5.   I represented Aubrey Lee Price, pursuant to the Criminal Justice Act, in *United States of America v. Aubrey Lee Price*, No. 6:12-CR-00010-BAE-GRS (S.D. Ga. July 11, 2012) and *United*

*States of America v. Aubrey Lee Price*, No. 6:14-CR-00016-LGW-GRS (S.D. Ga. June 3, 2014).

\* \* \* \*

9. I discussed Mr. Price's post-conviction rights with him after his sentencing hearing, including his right to file a direct appeal from his conviction and sentence, and a motion to collaterally attack his conviction and sentence, notwithstanding his having waived those rights under the ultimate circumstances of the case (none of the exceptions to Mr. Price's appeal waiver applied after sentencing).

10. I discussed *the advantages and disadvantages* of Mr. Price's filing a direct appeal from his conviction and sentence during my conversation with him referenced in ¶ 9; he advised me that he understood and agreed with my assessment; and he signed the Notice of Post-conviction Consultation Certification that I filed in both cases referenced in ¶ 5.

Doc. 41-1 at 2-3 (emphasis added).

These materials rebut Price's § 2255 claim that counsel "neglected to apprise me of the advantages and disadvantages of filing a direct appeal in my criminal case." Doc. 33 at 3. Critically, Price does *not* claim that counsel's "no-right-to-appeal" advice was wrong. That's not surprising because it wasn't. Price gave up his right to appeal, and he acknowledged that not only in writing, but under oath during his guilty-plea hearing, doc. 36 at 41-42. Hence, there was nothing ineffective

about counsel's advice.   Even assuming that Price's IAC claim is not barred by the double-waiver, it fails on the merits.

### B.  Ineffective Assistance at Sentencing

Ground One, in its entirety, states:

This case is about an unjust sentence. "Unjust" because the Court did not have the requisite facts to accurately determine my level of culpability. Simply put, at sentencing, the Court was led to believe that I committed bank, securities and wire fraud for personal gain. Ultimately, the Court believed that my fraudulent actions caused the failure of a bank and the loss of significant investments by many victims. Nonetheless, evidence presented during the instant proceeding will affirm that the bank was insolvent well before my fraudulent actions. Moreover, the evidence will show that the fraudulent actions and gross mismanagement of the bank's assets by the bank's previous owners and directors significantly contributed to the bank's insolvency and consequential investor losses. Additionally, the evidence will affirm that the fraud I committed and readily admitted to both the Government and the Court was committed solely as a desperate attempt to save the bank from failure and my investors from financial loss.  Finally, the evidence will show that I made my sentence Counsel aware of these facts and repeatedly requested him to present them to the sentence Court.

Once these facts are proven, the Court will be presented with two primary questions.  First, did my Counsel's failure to prove these same facts during the sentence phase of the criminal proceeding constitute deficient performance under an objective standard of reasonableness? And second, is there a reasonable probability that, but for, my Counsel's failure to prove these facts to the sentence Court, there would have been a different outcome in my sentence? At the end of this proceeding, if the Court answers both questions affirmatively then I will be entitled to a new sentence that is based on the evidence which accurately reflects my level of culpability.

Doc. 33 at 3.

Price simply ignores the fact that he also waived this "culpability calibration" claim. Waivers like his "will be enforced if . . . either: (1) the district court specifically questioned the defendant about the waiver during the plea colloquy, or (2) the record clearly shows that the defendant otherwise understood the full significance of the waiver." *United States v. Benitez–Zapata*, 131 F.3d 1444, 1446 (11th Cir. 1997).

That's what happened here. Price confirmed, when he signed his plea agreement, that he "read and carefully reviewed th[e] agreement with [his] attorney," understood "each provision of th[e] agreement," and voluntarily agreed to it. Doc. 8 at 19. And, after the Government summarized that agreement and read the appeal and collateral attack waivers into the record at Price's guilty-plea hearing, doc. 36 at 41-42, he stated -- under oath -- that he understood their import and agreed to their inclusion. He again affirmed that understanding *after* the district judge explained them. *Id.* at 44, 45. The record shows that this Court questioned Price about his waivers and he understood their impact.

In the face of that clear record, Price cites no plea-voluntariness (thus, waiver-invalidating) grounds,[5] but merely faults sentencing counsel's performance -- that counsel should have done a better job of convincing the Court that Price is not as culpable as the PSR makes him out to be.[6] Thus, he shows no detour around his waiver. *See Spaulding v. United States*, 2016 WL 1047041 at * 3 (S.D. Ga. Mar. 10, 2016) ("such an IAC claim must go directly to the validity of the guilty plea and post-conviction waivers -- that counsel misled or coerced his client into pleading guilty/waiving his rights, or in some way materially bungled the plea offer to the extent that a client would not knowingly and intelligently accept it. *McClendon v. United States*, 944 F. Supp. 2d 1351, 1356 (S.D. Ga. Mar. 10, 2014)."), cited in *Garrett v. United States*, 2016

---

[5]  *Compare Patel v. United States*, 252 F. App'x 970, 975 (11th Cir. 2007) (movant's allegation that his plea was involuntary because his attorney and family members coerced him into pleading guilty could be entertained in a § 2255 motion despite a collateral attack waiver in his plea agreement), cited in *Fulmer v. United States*, 2014 WL 1698880 at * 3 (S.D. Ga. Apr. 29, 2014), *with Morgan v. United States*, 2016 WL 2758278 at * 2 (S.D. Ga. May 12, 2016) ("Post-plea events (e.g., errors at sentencing, or a lawyer's incompetence on appeal) simply have no bearing on whether a defendant knowingly and intelligently pled guilty.").

[6]  Of course, that's just "pure applesauce," *King v. Burwell*, ___ U.S. ___, 135 S. Ct. 2480, 2501 (2015) (Scalia, J., dissenting), especially since Price did *not* then object to the PSR, which otherwise supports the sentencing judge's 360 month sentence (which, in turn, honors his plea agreement's sentence cap).

WL 1296183 at *4 (S.D. Ga. Mar. 30, 2016); *cf.*, *Crawford v. United States*, 501 F. Appx. 943, 945 (11th Cir. 2012) ("Crawford's postconviction challenge to his sentence is barred by the appeal waiver in his plea agreement. Crawford acknowledged during his change of plea hearing that the waiver would bar him from challenging the miscalculation of his advisory guideline range.").[7]

Finally, Price failed to appeal this claim, so it is also barred by procedural default. *See Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (movants under § 2255 "generally must advance an available challenge to a criminal conviction or sentence on direct appeal or else [are] barred from presenting the claim in a § 2255 proceeding"); *Stone v.*

---

[7] *See also United States v. Whitney*, 468 F. App'x 637, 638 (7th Cir. 2012) (upholding "on any ground" appellate waiver); *United States v. Johnson*, 480 F. App'x 229, 231 (4th Cir. 2012) (upholding waiver of right to appeal "the conviction and any sentence within the statutory maximum" on "any ground whatsoever"); *McCullough v. United States*, 2012 WL 3113990 at *3 (S.D.Ga. July 31, 2012) ("Allowing a movant to attack his sentence after executing a knowing and voluntary appeal and collateral-appeal waiver would permit a defendant to circumvent the terms of the . . . waiver simply by recasting a challenge to his sentence as a claim of ineffective assistance, thus rendering the waiver meaningless.") (quotes and cite omitted); *Gweh v. United States*, 2013 WL 140635 at * 3 (S.D.Ga. Jan. 9, 2013).

Incidentally, some courts also apply a "miscarriage of justice" exception. *United States v. Ruiz–Gonzalez*, 427 F. App'x 22, 25 (1st Cir. 2011) ("However, even if the waiver is knowing and voluntary, we retain discretion not to enforce the waiver if it would result in a 'miscarriage of justice.' ") (quotes and cite omitted). Price doesn't raise that here. Nor would that bucket carry any water if he did.

*Powell*, 428 U.S. 465, 478 n. 10 (1976) (28 U.S.C. § 2255 will not be allowed to do Service for an appeal); *Russell v. United States*, 2013 WL 1346610 at * 2 (N.D. Ala. Apr. 11, 2013) (A § 2255 petitioner's "abuse of judicial discretion/excessive sentencing claim is barred by procedural default because he did not raise it on direct appeal.").[8]

## III.  CONCLUSION

Aubrey Lee Price has advanced the very "buyer's remorse" that his collateral waiver prevents, and of which the guilty-plea judge forewarned. *Nelson v. United States*, 2015 WL 4756975 at * 1 (S.D. Ga. Aug. 11, 2015) ("Nelson has wasted this Court's time with a 'buyer's remorse' filing.  He chose to plead guilty with full knowledge of the consequences.  Now he must live with those consequences.").  His § 2255 motion therefore must be **DENIED**.  Doc. 33.

Meanwhile, the Court **DENIES** as moot his motion for enlargement of time (the Government does not raise § 2255(f)'s statute

---

[8]  While attorney ineffectiveness can supply cause to overcome that default, *Murray v. Carrier*, 477 U.S. 478, 488 (1986); *Reece v. United States*, 119 F.3d 1462, 1465 (11th Cir. 1997); *Russell*, 2013 WL 1346610 at * 2, there was no ineffective representation, as noted above, in correctly advising Price that he had validly waived his appeal rights in exchange for drastically reduced sentence exposure.  Indeed, Price does not argue that counsel was ineffective for failing to raise his "culpability calibration" claim on appeal -- only that counsel failed to properly counsel him on the advantages and disadvantages of taking an appeal.  Doc. 33 at 3.

of limitations defense).  Doc. 42.  The Court also **DENIES** as frivolous movant's motions to compel counsel to release documents to him.  Docs. 43 & 44.  Finally, it **DENIES** as moot his appointment of counsel motion, doc. 55, since retained counsel have appeared.  Docs. 71 & 72.

Applying the Certificate of Appealability (COA) standards set forth in *Brown v. United States*, 2009 WL 307872 at * 1-2 (S.D. Ga. Feb. 9, 2009), the Court discerns no COA-worthy issues at this stage of the litigation, so no COA should issue either. 28 U.S.C. § 2253(c)(1); Rule 11(a) of the Rules Governing Habeas Corpus Cases Under 28 U.S.C. § 2255 ("The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.") (emphasis added). Any motion for leave to appeal *in forma pauperis* therefore is moot.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any

request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this 8th day of February, 2017.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA